# EXHIBIT 2

# COMPLAINT

RUSSELL DLIN
108 Old House Ct
Pikesville, MD 21208-6351

*Individually and on behalf of
all others similarly situated,*

              Plaintiff,

      v.

GREYSTAR MANAGEMENT
SERVICES, L.P.
18 Broad Street, 3rd Floor
Charleston, SC 29401
**Serve on:**
THE CORPORATION TRUST,
INCORPORATED, Resident Agent
2405 York Road, Suite 201
Lutherville Timonium, MD 21093,

GREYSTAR REAL ESTATE
PARTNERS, LLC
465 Meeting Street, Suite 500,
Charleston, SC 29403
**Serve on:**
THE CORPORATION TRUST
COMPANY, Resident Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

and

GREP GENERAL PARTNER, LLC
465 Meeting Street, Suite 500,
Charleston, SC 29403
**Serve on:**
THE CORPORATION TRUST
COMPANY, Resident Agent
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19801

           Defendants.

IN THE CIRCUIT COURT FOR PRINCE

GEORGE'S COUNTY

                            RS

Case No.  C-16-CV-25-000846

---

## Class Action Complaint and Demand for Jury Trial

### Introduction

    1.     Plaintiff Russell Dlin ("Plaintiff" or "Mr. Dlin"), on behalf of himself and all others similarly situated, sues Defendant Greystar Management Services, L.P. ("Greystar Management") and its two general partners, Greystar Real Estate Partners, LLC

("Greystar Real Estate") and GREP General Partner, LLC ("GREP") (Greystar Management, Greystar Real Estate, and GREP are, collectively, "Greystar"), on a class-action basis.

2.      Greystar is the largest landlord in the United States. This lawsuit is about 1) Greystar's undisclosed junk fees imposed on residential tenants, and 2) Greystar's refusal to pay its tenants the statutorily required interest on security deposits.

3.      Through this lawsuit, Plaintiff seeks to recover surprise junk fees he and other tenants paid to Greystar, which were not mentioned in their leases. Plaintiff brings claims on behalf of the following "Junk Fee Class":

> All residential tenants in the United States from whom Greystar collected a
> monthly fee not disclosed by the underlying lease.

4.      Plaintiff also brings claims on behalf of the following Junk Fee Subclass, limited to Maryland residents:

> All members of the Junk Fee Class whose lease was for residential real
> property located in Maryland.

5.      Furthermore, Greystar collects security deposits from Plaintiff and many other Maryland tenants.

6.      However, Greystar routinely fails to return those security deposits, plus interest, as required by law.

7.      Accordingly, Plaintiff brings class action claims on behalf of the following "Maryland Security Deposit Class":

> All persons who paid a security deposit of $50 or more for residential real
> property in a Greystar community in Maryland, where the security deposit
> was held for six months or more, and where Greystar failed to pay or credit
> simple interest on the security deposit at the daily U.S. Treasury yield curve
> rate for 1 year, as of the first business day of each year, or 1.5% a year,
> whichever is greater, within 45 days of the end of their tenancies.

8.      Excluded from each Class are all employees, officers and directors of Greystar and of Greystar's parent or subsidiary companies and predecessors and successors, and all employees of the Court.

2

**Parties**

9.    Plaintiff is an individual who is a citizen of Maryland.

10.    Greystar Management is a limited partnership formed in Delaware with its principal place of business in South Carolina. It is engaged in a multi-family property management business in the state of Maryland. Among other things, Greystar Management collects rent, junk fees and security deposits from Plaintiff and Class members and undertook Greystar's activities described in this Complaint.

11.    Greystar Real Estate is an LLC organized in Delaware with its principal place of business in South Carolina, and it is one of the general partners of Greystar Management. As a general partner, Greystar Real Estate is liable for the debts of Greystar Management, including all amounts demanded by Plaintiff and the Class in this case. Greystar Real Estate is a nationwide multi-family rental property owner, developer, and manager of residential rental properties across the United States. It conducts its property management business through, among others, Defendants Greystar Management and GREP. Greystar Real Estate owns and leases real property in Maryland. At all times material to this Complaint, Greystar Real Estate directed Greystar's activities described in this Complaint.

12.    GREP is an LLC organized in Delaware, with its principal place of business in Delaware, and is one of the general partners of Greystar Management. As a general partner, GREP is liable for the debts of Greystar Management, including all amounts demanded by Plaintiff and the Class in this case.

13.    Greystar holds itself out as a single entity. Greystar Real Estate and GREP are treated by Greystar as one and the same with Greystar Management.

14.    Greystar engages in extensive intrastate business in Maryland. Among other things, Greystar operates no fewer than 27 residential apartment communities in Maryland. For each of these Maryland communities, Greystar is responsible for advertising available rental units, maintaining property websites, communicating with

3

current and prospective tenants in Maryland, preparing leases, leasing rental units to tenants in Maryland, billing tenants and collecting payments in Maryland, marketing properties, hiring, training, and employing on-site personnel at its Maryland properties, entering into contracts with third-party service providers in Maryland, and maintaining apartment units and property premises in Maryland. For example, Greystar operates the Esplanade At National Harbor, the Varsity at College Park, Addison Row in Capitol Heights, Atworth in Riverdale, Avana Heather Ridge in Bowie, Brookestone Townhomes in Waldorf, Midtown at Camp Springs, Mosaic at Largo Station, the Sovren apartments in Hyattsville, Tapestry Largo Station, the Highline Apartments in Hyattsville, the Union on Knox apartments in College Park.

### Jurisdiction and Venue

15.    This Court has subject-matter jurisdiction over this case pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 1-501 and 4-402(e)(2). This Court has personal jurisdiction pursuant to Md. Cts. & Jud. Proc. Code Ann. §§ 6-102 and 6-103(b), as Defendants transact business and perform work and service in the State of Maryland, contract to supply services in the State of Maryland, and regularly do and solicit business and engages in other persistent courses of conduct in the State of Maryland, including the business described in this Complaint.

16.    Venue is proper in this Court under Md. Cts. & Jud. Proc. Code Ann. §§ 4-402(e)(2) and 6-201, as the amount in controversy in this case exceeds $25,000.00 and because Greystar carries on a regular business and habitually engages in vocation in Prince George's County, Maryland. Among other things, Greystar directs its activity described in this Complaint to persons including residents of Prince George's County Maryland, and contracts to perform that business with respect to properties located in Prince George's County Maryland.

### Greystar's Junk Fees

17.    Greystar lines its pockets by charging junk fees to tenants like Plaintiff and

4

Class members, when those junk fees are not mentioned in the tenants' lease agreements.

18.    "Junk fees are fees that are mandatory but not transparently disclosed to consumers." *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, The White House, March 5, 2024 (available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/)

19.    Junk fees in rental housing impose a "serious burden on renters." *FACT SHEET: Biden-Harris Administration Takes on Junk Fees in Rental Housing to Lower Costs for Renters*, The White House, July 19, 2023 (available at https://www.whitehouse.gov/briefing-room/statements-releases/2023/07/19/fact-sheet-biden-harris-administration-takes-on-junk-fees-in-rental-housing-to-lower-costs-for-renters/). These "[h]idden fees ... take money out of people's pockets" and "make it more difficult to comparison shop." *Id.*

20.    For example, in the transactions of Plaintiff and many others, Greystar charged junk "trash fees" which were not disclosed in their lease agreements.

21.    Every month, Greystar required Plaintiff to pay $15.00 for "trash," in addition to his rent and other charges, even though no such "trash" fee was mentioned in his lease.

22.    Undisclosed junk fees, like Greystar's trash fees, injure and damage already overburdened tenants:

> Even after renters secure housing, they are often surprised to be charged mandatory fees on top of their rent, including ... fees for things like ... trash collection.

*Id.*

23.    As the Editorial Advisory Board of the Maryland Daily Record observed in 2023, "considering that apartment rents have increased 25 percent in an 18-month period beginning in 2021, adding fees to an already obese rent can destroy the budget of many families." Editorial Advisory Board, *Disclosing Fees to All Tenants*, Maryland Daily Record Sept. 14, 2023(https://thedailyrecord.com/2023/09/14/disclosing-all-fees-to-

tenants/) (last visited Jan. 13, 2025). Rents have only continued their steep increase since this observation in 2023.

24.    And, according to the U.S. Department of Justice, responsibility for rising rents rests at least in part with Greystar. The Department of Justice sued Greystar on January 7, 2025, and issued the following statement:

> The Justice Department, together with its state co-plaintiffs, filed an amended complaint today in its antitrust lawsuit against RealPage, to sue six of the nation's largest landlords for participating in algorithmic pricing schemes that harmed renters.
>
> The amended complaint alleges the landlords — Greystar Real Estate Partners LLC (Greystar); Blackstone's LivCor LLC (LivCor); Camden Property Trust (Camden); Cushman & Wakefield Inc and Pinnacle Property Management Services LLC (Cushman); Willow Bridge Property Company LLC (Willow Bridge) and Cortland Management LLC (Cortland) — participated in an unlawful scheme to decrease competition among landlords in apartment pricing, harming millions of American renters. Together, these landlords operate more than 1.3 million units in 43 states and the District of Columbia.

Office of Public Affairs, U.S. Department of Justice, "Justice Department Sues Six Large Landlords for Algorithmic Pricing Scheme that Harms Millions of American Renters," Jan. 7, 2025 (available at: https://www.justice.gov/opa/pr/justice-department-sues-six-large-landlords-algorithmic-pricing-scheme-harms-millions) (last visited Jan. 13, 2025).

25.    Greystar's unreasonably aggressive approach toward reaping money from its tenants is illustrated by a CBS News report that Greystar charged a family more than $4,000 after their mother died, on grounds that her death violated the lease. It reportedly "sent her family a bill for $4,140 in penalty fees, because she says the complex claimed that her death meant that she broke her lease early." Kati Weis, "Colorado family charged $4,000 in fees after loved one dies unexpectedly, landlord says death meant she broke her lease," CBS Colorado, Jan. 29, 2024 (available at: https://www.cbsnews.com/colorado/news/colorado-family-charged-fees-after-loved-one-dies-unexpectedly-landlord-death-meant-broke-lease/) (last visited Jan. 13, 2025).

6

26.    Greystar is the largest landlord in the United States with close to a million residential units across the nation. Greystar has been repeatedly sued for its predatory practices.

27.    Plaintiff was a tenant at a Greystar apartment building, and every month Greystar charged and collected a $15.00 junk "trash fee" from Plaintiff which was not mentioned in his lease. Plaintiff was forced to pay this fee - otherwise, Greystar would have accused him of being behind on his rent, would have charged him penalties, and would have sought to evict him.

28.    Greystar was unjustly enriched by the junk trash fees it charged to Plaintiff. Plaintiff had never agreed to pay such fees but was forced to do so by Greystar. Furthermore, no trash services for Plaintiff's residence actually cost Greystar or anyone else $15.00 a month. Instead, Greystar's junk trash fee to Plaintiff was a hidden profit center designed to line Greystar's pockets at the expense of Plaintiff and other tenants.

29.    American jurisprudence broadly condemns practices like Greystar's scheme to enrich itself through collecting surprise junk fees. It is a basic American legal principle that "[a] person who is unjustly enriched at the expense of another is subject to liability in restitution." Restatement (Third) Restitution, § 1. Here, Greystar's collection of junk fees not mentioned in tenants' leases is unjust, and Greystar is subject to restore those junk fees to Plaintiff and others tenants who paid them.

30.    Furthermore, specific Maryland statutory law prohibits Greystar from collecting its surprise junk fees from Plaintiff and Maryland tenants. Maryland's Consumer Debt Collection Act ("MCDCA") prohibits Greystar from collecting "*any amount* (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Alexander v. Carrington Mortg. Services, LLC*, 23 F.4th 370, 376 (4th Cir. 2022) (emphasis in *Alexander*).

31.    Greystar's surprise junk fees are fees not authorized by the agreement creating

7

the debt - the lease. Junk fees like the trash fee charged to Plaintiff are not permitted by law, either. Accordingly, Greystar's junk fees are not collectible.

### Greystar's Failure to Pay Required Interest on Security Deposits

32.    Greystar owns and manages residential real property across the United States, including in Maryland.

33.    Greystar operates and controls the properties where Class Representative and Class members paid security deposits to Greystar. *See, e.g.,* https://jobs.greystar.com/job/camp-springs/assistant-community-manager-midtown-at-camp-springs/35302/77614307424 ("Greystar is the largest operator of apartments in the United States, manages over 1,000,000 units/beds globally") (last visited Feb. 19, 2025).

34.    For each Greystar community, Greystar is responsible for negotiating and signing leases, for imposing and collecting charges from tenants, collecting security deposits and rent, and for holding and administration of tenant security deposits. All of these functions are directed, controlled, and supervised by Greystar utilizing uniform policies and procedures adopted and implemented by Greystar.

35.    Greystar was the landlord of Plaintiff and each Security Deposit Class member, under Md. Code Ann., Real Prop. § 8-203.

36.    Greystar employees perform all sales and leasing activities for Greystar communities, like Plaintiff's, to achieve the community's revenue and occupancy goals by greeting and qualifying prospects, conducting community tours and showing apartments, processing applications, credit screening, and criminal background checks, preparing the lease and move-in package, and ensuring a smooth resident move-in and lease signing.

37.    For each Greystar community, like the one Plaintiff lived in, Greystar employees:

> a. inspect apartments prior to resident move-in and ensure apartments are in move-in ready condition and schedule any

8

outstanding item to be addressed with the maintenance team.

b. stay informed about current market and competitor conditions that may impact the community's occupancy and sales results, develop and implement short- and long-term marketing plans and goals to sustain occupancy, and seek to boost occupancy.

c. design and execute marketing activities to create and drive traffic to the community, including implementing resident referral and employer outreach programs, using internet marketing tools (Craigslist, Facebook, e-mail, and other websites), and following other community-specific marketing plans, drives, and special programs.

d. use the on-site property management software (OneSite, Yardi, etc.) to track apartment availability, record traffic and leasing activities, manage resident and prospect data, and capture critical demographic and other information about existing and future residents.

e. ensure that the community and show units meet Greystar's standards for show quality by daily inspecting the marketing corridor and leasing tour, communicating maintenance and upkeep needs to the community's maintenance team members, merchandising and ensuring a physically appealing show unit and/or model and amenities, and preparing the leasing office for daily leasing activities.

f. follow-up with prospects and new residents to ensure satisfaction by sending e-mail, thank-you notes, and cards or making telephone calls or other contacts to finalize decisions to lease and/or renew. Greystar employees execute and perform activities in support of the community's lease renewal program by preparing lease renewal

9

letters and packages for residents, meeting with and contacting
renewing residents in advance of move-out dates, and ensuring that
lease renewal documents are signed and implemented on time.

38.     Furthermore, for each Greystar community, like the one Plaintiff lived in,
Greystar employees:

     a. complete daily transactions and tasks related to the financial
operation of the community by collecting and posting rent, fees, and
other payments, preparing daily bank deposits and reconciling bank
accounts, preparing financial reports, and processing invoices and
payables.

     b. operate the property management software (Yardi/OneSite) and
complete transactions by entering all required fields correctly and by
completing updates and back-ups to ensure the integrity of the
system.

     c. review resident files and accounting records to determine unpaid
and/or late fees owed, communicate with residents regarding
outstanding balances, implement procedures for collecting on
delinquencies, and enforce the lease to maximize revenue.

     d. review and submit invoices from vendors, contractors, and service
providers for payment by reconciling work performed or products
purchased, obtaining community manager approval, coding charges
to appropriate Chart of Account codes, and managing
communication between the vendor/contractor, accounting, and the
client/owner as needed.

     e. follow Greystar's established procedures related to evictions by
following proper notice requirements, evicting residents, and
representing the community as required in court hearings and

10

eviction proceedings.

    f.  process resident move-outs by reviewing lease terms and notice requirements, applying appropriate deposit and lease cancellation fees, if applicable, and processing the disposition in accordance with established procedures and legal requirements.

    g.  promote resident satisfaction and retention by responding to complaints, questions, and requests in a timely manner, and taking appropriate action to resolve and address service issues.

    h.  manage the Greystar communities in compliance with Greystar policies, procedures, and business practices.

*See, e.g.*, https://jobs.greystar.com/job/camp-springs/assistant-community-manager-midtown-at-camp-springs/35302/77614307424 (last visited Feb. 19, 2025).

39.    Furthermore, for each Greystar community, like the one Plaintiff lived in, Greystar employees:

    a.  assist and complete work orders generated from resident requests for service, as well as perform routine upkeep on the community by diagnosing the source or cause of the defect or problem, and making repairs in accordance with established policies, procedures, safety standards, and code requirements.

    b.  oversee and complete the "make-ready" process to prepare vacant apartment homes for leasing and new moveins by completing the pre-move-out inspection, creating a "punch" list of maintenance work needed, scheduling vendors and contractors as needed, obtaining needed supplies and materials, completing all maintenance tasks, and inspecting completed work.

    c.  develop standards for the cleanliness and overall appearance of the community's grounds, amenities, building exteriors, market ready

11

unit interiors, breezeways, curbs, signage, leasing office, central garbage areas, parking lots, and other buildings and common areas to ensure that they reflect and represent the high quality of the community and Greystar standards.

d. periodically inspect work performed by other service team members to assess effectiveness of policies and procedures and develop corrective action plans as needed.

e. periodically inspect work performed by contractors, vendors and other service providers to verify the work, materials and services meet quality standards, scope and specifications as required.

f. maintain adequate inventory of spare parts and maintenance materials and order supplies and tools as needed to stay within budgetary guidelines.

g. complete monthly preventative maintenance procedures as outlined in Greystar's Policy and Procedure Manual.

h. support cost-cutting and expense control programs by fixing rather than replacing parts when possible, not being wasteful with materials and supplies, and practicing the correct use for tools and equipment.

i. conduct regularly scheduled Greystar safety meetings, ensure all MSDS sheets are current and readily accessible, and keep up to date on all OSHA and other safety related laws and requirements to ensure community compliance.

j. demonstrate customer services skills by treating residents and others with respect, answering questions from team and residents, responding sensitively to complaints about maintenance services, and assigned work orders with efficiency and urgency.

See, e.g., https://jobs.greystar.com/job/baltimore/maintenance-manager-the-porter-

brewers-hill/35302/77600004592 (last visited Feb. 19, 2025).

40.    For each Greystar community, like the one Plaintiff lived in, Greystar employees:

> a.  complete assigned work orders generated from resident requests for service, as well as preventative maintenance on the property by diagnosing the source or cause of the defect or problem, and making repairs in accordance with established policies, procedures, safety standards, and code requirements.
>
> b.  complete the "make-ready" process to prepare vacant apartment homes for leasing and new move-ins by completing the pre-move-out inspection, creating a "punch" list of maintenance work needed, scheduling vendors and contractors as needed, obtaining needed supplies and materials, completing all maintenance tasks, and inspecting completed work.
>
> c.  follow procedures for accessing and obtaining materials, supplies, equipment, tools, and other items from the property's maintenance department by tracking inventory used, returning unused items to the established location, and notifying the maintenance supervisor about re-ordering needs.
>
> d.  maintain the grounds, common areas, and amenities by picking up trash and debris, pressure-washing breezeways and pool areas, performing general cleaning, and painting curbs and signage as needed.

*See, e.g.,* https://jobs.greystar.com/job/east-riverdale/maintenance-technician-atworth/35302/77226364432 (last visited Feb. 19, 2025).

41.    Greystar implemented and utilizes a computer program for determining how much money to pay back to a tenant when returning the tenant's security deposit.

13

42.     Under Greystar's policies and procedures, Greystar fails to return security deposits as required by law. Greystar has a policy and practice of failing to pay interest on security deposits as required by Maryland law.

43.     When a residential tenant pays a security deposit in Maryland, that security deposit must be paid back with interest "at the daily U.S. Treasury yield curve rate for 1 year, as of the first business day of each year, or 1.5% a year, whichever is greater, less any damages rightfully withheld," within 45 days after the end of the tenancy. Md. Code Ann, Real Prop. § 8-203(e).

44.     Notably, the U.S. Treasury yield curve rate has far exceeded 1.5% a year for some time. In every month since January, 2023, that yield curve rate has exceeded 4%.

45.     Greystar's computerized method of calculating interest due on security deposits, however, does not comply with the requirements of Maryland law.

46.     For example, Plaintiff paid a $600 security deposit when he first entered into the lease for his apartment in November, 2021.

47.     Plaintiff's lease expired in August, 2024 – some 33 months later – but provided Plaintiff a statement in which Greystar only credited Plaintiff a quarter ($0.25) in interest.

48.     When Plaintiff told a Greystar employee that he was entitled to more interest on his security deposit, the Greystar employee told him that he was not entitled to any more interest.

49.     Later, Plaintiff received a "refund" E-mail from "SmartDisburse" purporting to be a refund of his security deposit plus interest, in the total amount of $624.91.

50.     Plaintiff was entitled to more interest than Greystar paid him. As shown by the simple and publicly available Rental Security Deposit Calculator provided by the Maryland Department of Housing and Community Development, Plaintiff was entitled to a refund of no less than $653.18 – a total which includes the security deposit of $600, plus interest of $53.18. *See* **Exhibit A**, Rental Security Deposit Calculator; *see also* https://dhcd.maryland.gov/Pages/RSDCalculator/Default.aspx.

14

51.     Instead of refunding Plaintiff the $53.18 he was owed, Greystar ultimately paid Plaintiff interest of only $24.91 and kept more than half of the interest Plaintiff was owed.

52.     Unless and until this Court grants the relief Plaintiff seeks through this action, Greystar will retain the proceeds of its unlawful activities, to the detriment of Plaintiff and the Class.

### **Class Action Allegations**

53.     The Classes, as defined above, are identifiable.    The proposed Class Representative, Mr. Dlin, is a member of each Class.

54.     The Classes are so numerous that joinder of all members is impracticable. Each proposed Class consists of more than 40 persons.

55.     There are questions of law and fact which are not only common to each Class, but which predominate over any questions affecting only individual Class members.  The common and predominating questions for the Classes include, but are not limited to:

> (a) Whether Greystar was legally permitted to charge and collect monthly fees from Plaintiff and nationwide Junk Fee Class members which were not disclosed in the underlying lease;
>
> (b) Whether Greystar must refund fees it collected from Plaintiff and nationwide Junk Fee Class members which were not disclosed in the underlying lease but which Greystar nevertheless collected;
>
> (c) Whether Greystar's actions in its dealings with the nationwide Junk Fee Class entitle Plaintiff and the Class to restitution;
>
> (d) Whether Greystar's actions in its dealings with the Maryland Junk Fee Subclass violated the Maryland Consumer Debt Collection Act, Md. Code Ann., Com. Law §§ 14-201 et seq. ("MCDCA");
>
> (e) Whether Greystar's actions in its dealings with the Maryland Junk Fee Subclass violated the Maryland Consumer Protection Act, Md. Code Ann., Com. Law §13-101 et seq. ("CPA");

15

(f) Whether Greystar was required to pay or credit simple interest on the security deposits of Plaintiff and Security Deposit Class members at the daily U.S. Treasury yield curve rate for 1 year, as of the first business day of each year, or 1.5% a year, whichever is greater, within 45 days of the end of their tenancies; and,

(g) Whether Greystar must pay the penalties and attorney's fees required under Md. Code Ann., Real Prop. § 8-203 to Plaintiff and Security Deposit Class Members.

56.    The claims of the Plaintiff are typical of the claims of the respective members of the Classes within the meaning of Md. Rule 2-231(b)(3) and are based on and arise out of similar facts constituting the wrongful conduct of Greystar.

57.    Plaintiff will fairly and adequately protect the interests of the Classes within the meaning of Md. Rule 2-231(b)(4). Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions and complex consumer litigation.

58.    Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action.

59.    The prosecution of separate actions by individual members of the Classes would create a risk of establishing incompatible standards of conduct for Greystar within the meaning of Md. Rule 2-231(c)(1)(A).

60.    Greystar's actions are generally applicable to the Classes as a whole, and Plaintiff seeks declaratory relief with respect to the Classes within the meaning of Md. Rule 2-231(c)(2).

61.    Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(c)(3).

16

62. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation, and due to the relatively small amounts of individual damages for Class members.

63. Plaintiff's counsel are experienced in class actions, and foresee little difficulty in the management of this case as a class action.

### Causes of Action

### Count One
### Declaratory Relief
*(on behalf of Plaintiff and all members of the Classes)*

64. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

65. This claim for declaratory relief is brought to settle and obtain relief from uncertainty and insecurity with respect to the rights, status and legal relations regarding Plaintiff and members of the Classes and Greystar.

66. Greystar takes the position that it was entitled to charge monthly junk fees to Plaintiff and Junk Fee Class members even though the junk fees were not disclosed in the leases of Plaintiff or Junk Fee Class members.

67. Plaintiff and the Junk Fee Class members take the position that Greystar was required to disclose any monthly fees in its lease with Plaintiff and could not collect monthly junk fees without disclosing them upfront.

68. Furthermore, Greystar takes the position that it did not wrongfully fail to pay Plaintiff and Security Deposit Class members their security deposits plus statutorily mandated interest as required under Md. Code Ann., Real Prop. § 8-203.

69. Plaintiff and the Security Deposit Class members, however, take the position that Greystar wrongfully failed to pay Plaintiff and Security Deposit Class members their security deposits plus statutorily mandated interest as required under Md. Code Ann., Real Prop. § 8-203.

17

70. Plaintiff and members of the Classes have received collection notices from Greystar demanding payment of the amounts alleged in this Complaint, including amounts charged for junk fees not disclosed in the Class members' underlying leases. Furthermore, Greystar has failed to pay amounts due to Plaintiff and others as a result of security deposits collected by and maintained by Greystar.

71. This presents an actual, judicable controversy between the parties relating to the actions by Greystar in its dealings with Plaintiff and members of the Classes, relating to the application of basic principles of restitution and Maryland law to those actions, and relating to the legitimacy of charges assessed as a result of those actions. In particular, Greystar has collected monthly junk fees from Plaintiff and other Junk Fee Class members which were not disclosed in their leases.  Greystar was not entitled to assess or allocate those junk fee charges because they were not disclosed in Plaintiff and Class members' lease agreements. Furthermore, Greystar collected and maintained security deposits paid by Security Deposit Class members and failed to refund those deposits plus interest as required by Maryland law.

72. Plaintiff and members of the Junk Fee Class have a right to a declaration that the junk fees collected by Greystar, which were not disclosed in their leases, are uncollectible. Plaintiff and members of the Junk Fee Class are entitled to be free from the charges assessed against them through Greystar's unlawful actions, and to be free from the consequences of Greystar's unlawful collection of undisclosed junk fees.

73. Plaintiff and members of the Security Deposit Class have the right to a declaration that Greystar is legally required to refund them their security deposits, plus statutorily mandated interest.

## Count Two

## Unjust Enrichment

*(on behalf of Plaintiff and the Junk Fee Class)*

18

74. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

75. Plaintiff and members of the Junk Fee Class conferred benefits on Greystar by paying amounts billed to them by Greystar for junk fees not disclosed in their leases. Greystar collected those payments, and those payments added to its corporate revenue.

76. Greystar knew of the benefits conferred upon it by Plaintiff and the members of the Class. Greystar affirmatively demanded in its bills that Plaintiff and members of the Class pay amounts including, among other things, service fees for Greystar.

77. It would be inequitable for Greystar to retain the amounts that it has received from Plaintiff and Junk Fee Class members for junk fees not disclosed in their leases, as those amounts were paid as a result of its unlawful activity described in this Complaint, were not legally owed, and could not legally be collected by Greystar.

78. No contract existed between Plaintiff and the Junk Fee Class members and Greystar with respect to the collection of the Junk Fees Greystar collected from them.

## Count Three

## Money Had and Received

*(On behalf of Plaintiff and the Junk Fee Class)*

79.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

80.    Greystar charged and collected monthly junk fees from Plaintiff and Junk Fee Class members which were not disclosed or authorized by their underlying leases. No contract authorized Greystar to collect the junk fees it collected from Plaintiff and Junk Fee Class members.

81.    Greystar required Plaintiff and Junk Fee Class members to pay the monthly Junk Fees as part of their monthly lease payments.

82.    Greystar's actions in collecting monthly fees from Junk Fee Class members which were not authorized by the underlying leases were and are illegal and unjust.

19

83.    As a result of Greystar's actions in charging and collecting junk fees from Plaintiff and Class members which were not authorized or disclosed by the underlying leases, Greystar collected money, resulting from the charges which it unlawfully assessed to Plaintiff and Class members, to which it had no legal or equitable right.

84.    Greystar, for example, collected and retained money which was paid by Plaintiff and Class members for the monthly charges denominated as for "trash" fees in the bills Greystar sent to them, when no "trash" fee was authorized or disclosed in Plaintiff's lease. As a result of the actions alleged above, Greystar obtained possession of money which, in equity and good conscience, it ought not to be allowed to retain and should return to Plaintiff and other Class members.

### Count Four

### Violation of the Maryland Consumer Debt Collection Act

*(on behalf of Plaintiff and the Junk Fee Subclass)*

85. Plaintiff re-alleges and incorporate by reference the allegations set forth above as if fully set forth herein.

86. Greystar, at all times relevant to the actions alleged herein, was a "collector" within the meaning of section 14-201(b) of the Maryland Consumer Debt Collection Act ("MCDCA"), because the junk fees which Greystar collected and sought to collect from Junk Fee Class members them through the actions described herein arose from consumer transactions – i.e. the lease of residential real property.

87. In collecting and attempting to collect on the alleged debts of Plaintiff and members of the Class, Greystar violated section 14-202 of the MCDCA.

88. Among other things, Greystar violated section 14-202(8) of the MCDCA when it claimed, attempted, or threatened to enforce a right with knowledge that the right does not exist. Greystar claimed, attempted and threatened to enforce a right to collect junk fees not disclosed in leases from residential tenants, including Plaintiff and Maryland Junk Fee Subclass members, when it had no such right. Greystar knew that the

20

Plaintiff's and Maryland Junk Fee Subclass Members' leases did not authorize the junk fees it charged to and collected from them, but it collected those fees anyway.

89. Furthermore, Section 14-202(11) of the MCDCA prohibits "[t]he collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

90. The Junk Fees Greystar collected from Plaintiff and Class Members were not expressly authorized by the agreement creating the debt – the underlying lease agreements – or permitted by law. They are unlawful and illegal under the MCDCA. When Greystar collected these unlawful and uncollectible fees, which are prohibited by the MCDCA, it damaged Plaintiff and Class Members.

91. Greystar's actions in violation of the MCDCA proximately caused damages to Plaintiff and members of the Maryland Junk Fee Subclass. As a direct and proximate result of Greystar's method of collecting consumer debts in violation of Maryland law, Plaintiff and other members of the Class were assessed and paid charges which they did not legally owe, including junk fees not disclosed in their leases, which damaged them.

### Count Five

### Violation of Md. Code Ann., Real Prop. § 8-203

*(On Behalf of Plaintiff and the Security Deposit Class)*

92. Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

93. Greystar was the landlord of Plaintiff and other Security Deposit Class members.

94. Greystar is responsible for collecting and maintaining security deposits paid by Plaintiff and Security Deposit Class members, under Md. Code Ann., Real Prop. § 8-203.

95. Greystar collected Plaintiff and Security Deposit Class members' security deposits for their residential apartments.

96. Greystar was, by contract and under the law, responsible to maintain Plaintiff's

and Security Deposit Class members' security deposits in branches of federally insured financial institutions located in Maryland.

97. Greystar was, by contract and under the law, responsible to return and account for the security deposits of Plaintiff and Security Deposit Class members.

98. Greystar was contractually assigned and either originally held or succeeded to the interest in Plaintiff and Security Deposit Class members' lease agreements and under Md. Code Ann., Real Prop. § 8-203 which required maintenance and refund security deposits to Plaintiff and Security Deposit Class members in compliance with the law.

99. At the time that Plaintiff and Security Deposit Class members were entitled to receive a refund of their security deposit plus interest, Greystar was responsible to refund those amounts and held the interest in the lease agreement which required a refund of the security deposits, plus interest, to Plaintiff and Security Deposit Class members.

100. Md. Code Ann., Real Prop. § 8-203 requires that security deposits must be refunded, plus statutorily mandated interest, to tenants within forty-five (45) days after the end of their tenancies, as follows:

> (e)(1) Within 45 days after the end of the tenancy, the landlord shall return the security deposit to the tenant together with simple interest which has accrued at the daily U.S. Treasury yield curve rate for 1 year, as of the first business day of each year, or 1.5% a year, whichever is greater, less any damages rightfully withheld.
> (2)(i) Except as provided in subparagraph (ii) of this paragraph, interest shall accrue at monthly intervals from the day the tenant gives the landlord the security deposit. Interest is not compounded.
> (ii) No interest is due or payable:
> 1. Unless the landlord has held the security deposit for at least 6 months; or
> 2. For any period less than a full month.
> (3) Interest shall be payable only on security deposits of $50 or more.
> (4) If the landlord, without a reasonable basis, fails to return any part of the security deposit, plus accrued interest, within 45 days after the termination of the tenancy, the tenant has an action of up to threefold of the withheld amount, plus reasonable attorney's fees.

Md. Code Ann., Real Prop. § 8-203.

101. Plaintiff and each Security Deposit Class member paid a security deposit of

$50 or more, and the security deposit was held for at least six months.

102.    However, Greystar – who was contractually and statutorily responsible to maintain and refund the security deposits of Plaintiff and Class members – failed to refund or credit Plaintiff and Security Deposit Class members the full amount of their security deposits, plus interest, as required by Md. Code Ann., Real Prop. § 8-203.

103.    There was no reasonable basis for Greystar to fail to refund Plaintiff and Class members the full amount of their security deposit, plus statutorily required interest.

104.    Accordingly, Greystar is liable to Plaintiff and Security Deposit Class members for threefold the amount of their security deposits plus legally mandated interest which Greystar wrongfully withheld, plus reasonable attorney's fees.

### Count Six

### Violation of the Maryland Consumer Protection Act

*(on behalf of Plaintiff, the Junk Fee Subclass, and the Security Deposit Class)*

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

106.    The Maryland Consumer Protection Act ("CPA") generally prohibits unfair or deceptive trade practices in, among other things, the collection of consumer debts. *See* Md. Code Ann., Com. Law § 13-303(5).

107.    The actions of Greystar alleged herein constituted unfair or deceptive trade practices in the collection of consumer debts as defined by the CPA, and in taking those actions Greystar violated the CPA.

108.    For example, Greystar's practice of charging for and collecting junk fees which were not disclosed in underlying leases, described in this Complaint, constituted the failure to state a material fact where the failure deceives or tends to deceive.

109.    Moreover, the unfair or deceptive trade practices barred by the CPA specifically include the violation of the MCDCA. *See* Md. Code Ann., Com. Law § 13-301(14)(iii).

23

110.   Furthermore, the CPA prohibits "Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: ... The subsequent performance of a merchant with respect to an agreement of sale, lease, or rental." Md. Com. Law Code Ann. § 13-301.

111.   Greystar is a merchant under the CPA, as it directly or indirectly offers or makes available to consumers consumer realty. For example, Greystar offered and made available residential realty to Plaintiff and Class members. Greystar engaged in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with performance with respect to the Plaintiff and Class members' lease agreements, when it 1) charged Junk Fees not mentioned in the lease agreements to Plaintiff and Junk Fee Subclass members; and, 2) failed to properly refund security deposits plus interest to Plaintiff and Security Deposit Class members. Plaintiff and Class members' lease agreements required security deposits to be properly accounted and refunded, with statutorily mandated interest. Greystar knowingly failed to refund the required security deposits plus interest to Plaintiff and Maryland Security Deposit Class members in connection with performance of their lease agreements.

112.   Plaintiff and Class members sustained actual damages as a result of the actions in violation of the CPA and MCDCA alleged herein. Plaintiff and Junk Fee Subclass members were damaged by, among other things, the junk fees assessed to them by Greystar, which they paid, even though the junk fees were not disclosed in their lease agreements. Plaintiff and Security Deposit Class members were damaged by Greystar's failure to credit or return their security deposits plus the interest mandated by Maryland law on those deposits.

**Count Seven**

24

### Negligence

*(on behalf of Plaintiff and all members of the Classes)*

113.   Plaintiff re-alleges and incorporates by reference the allegations set forth above as if fully set forth herein.

114.   Greystar had a duty to Plaintiff and members of the Junk Fee Class to not charge or collect junk fees from them which were not disclosed in their leases.

115.   Greystar breached its duties of care to Plaintiff and members of the Junk Fee Class when it charged and collected junk fees from them which were not disclosed in their leases.

116.   Furthermore, Greystar had a duty to Plaintiff and members of the Security Deposit Class to refund them the proper amount of security deposits they paid, plus the interest required by Maryland law.

117.   Greystar breached its duties of care to Plaintiff and members of the Security Deposit Class when it failed to refund them the proper amount of security deposits they paid, plus the interest required by Maryland law.

118.   Plaintiff and members of both Classes have suffered actual losses and damages as the result of the conduct of Greystar. Among other things, Plaintiff and members of the Junk Fee Class have been assessed and forced to pay junk fees which were not disclosed in their leases, and which were not collectible. Plaintiff and members of the Security Deposit Class have been deprived of the proper refund of their security deposit, plus statutorily mandated interest. These damages, losses and injuries were proximately caused by the breaches of duty of Greystar. Plaintiff and Junk Fee Class members would not have paid junk fees not disclosed in their leases to Greystar absent Greystar's breaches of duty. Plaintiff and Security Deposit Class members would have received the proper refund of their security deposits, plus interest, absent Greystar's breaches of duty.

WHEREFORE, Plaintiff respectfully demands:

A.    a declaratory judgment establishing that Greystar cannot collect junk fees from Plaintiff and Junk Fee Class members when those junk fees are not disclosed in lease agreements;

B.    A declaratory judgment establishing that Greystar must properly refund security deposits and statutorily mandated interest to Plaintiff and Security Deposit Class members;

C.    recovery of all amounts paid by Junk Fee Class members for junk fees not disclosed in their leases, disgorgement and restitution of all benefits received by Greystar in connection with its charging and collection of junk fees not disclosed in leases from Plaintiff and Junk Fee Class members, and payment of all security deposits plus interest which Greystar improperly failed to pay to Security Deposit Class members, plus threefold all such amounts and attorney's fees under Md. Code Ann., Real Prop. § 8-203, all in an aggregated sum in excess of $75,000.00 for the proposed Classes; and,

D.    such other and further relief as the nature of this case may require.

Respectfully submitted,

/s/ Benjamin H. Carney (Att'y ID 0412140132)
Benjamin H. Carney (Att'y ID 0412140132)
bcarney@GWCfirm.com
Richard S. Gordon (Att'y ID 8912180227)
rgordon@GWCfirm.com
GORDON, WOLF & CARNEY, CHTD.
Executive Plaza 1
11350 McCormick Rd., Suite 1000
Hunt Valley, Maryland 21031
Telephone: (410) 825-2300
Facsimile: (410) 825-0066

**Attorneys for Plaintiff and the Class**

26

## **JURY TRIAL**

Plaintiff demands a trial by jury on all issues triable of right by a jury.

/s/ Benjamin H. Carney (Att'y ID 0412140132)
Benjamin H. Carney (Att'y ID 0412140132)

27